UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| WILLIAM BRYMER | ) | CIVIL ACTION NO. |
| | ) | 16-11282-DPW |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 03-10327-DPW-1 |
| UNITED STATES OF AMERICA | ) | |
| | ) | |

--------------------------------------------------------------

| | | |
|---|---|---|
| JAMES H. TURPIN, | ) | CIVIL ACTION NO. |
| | ) | 16-11269-DPW |
| Petitioner. | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 03-10327-DPW-2 |
| | ) | |
| UNITED STATES OF AMERICA | ) | |

MEMORANDUM AND ORDER
January 10, 2019

William Brymer and James H. Turpin have filed motions to vacate their sentences pursuant to 28 U.S.C. § 2255 contending they were improperly sentenced under a statute enhancing the term of imprisonment for those using a firearm during and in relation to a crime of violence.

On January 5, 2006, Brymer and Turpin were each sentenced imprisonment for 32 years based on their guilty pleas to two counts of violating 18 U.S.C. § 924(c), which prescribes certain punishments for "any person who, during and in relation to any *crime of violence* or drug trafficking crime . . . used or

carries a firearm." (emphasis added). The predicate "crime[s] of violence" supporting Brymer's and Turpin's § 924(c) convictions were bank robbery (in violation of 18 U.S.C § 2113(a) and (d)) and carjacking (in violation of 18 U.S.C. § 2119(1)).

Based on Supreme Court precedent since their convictions, Brymer and Turpin contend that their predicate crimes no longer constitute "crime[s] of violence" under § 924(c)(3) and, as a result, that they are entitled to post-conviction relief. More recent First Circuit precedent applying the Supreme Court teachings upon which they rely has undercut their contentions. For the reasons explained below, I will deny their motions.

## I. BACKGROUND

### A. *Factual Background*[1]

Just before 6:00 p.m. August 28, 2003, Brymer and Turpin (both wearing masks) entered the Telephone Workers Credit Union at the South Shore Plaza in Massachusetts. At least one of the men wielded and brandished a large silver revolver. The man with the revolver threatened one teller with the gun and banged the barrel of the gun on the glass during the robbery. The

---

[1] The following facts are taken from Brymer and Turpin's Presentence Reports prepared by the Probation Office after their guilty pleas to the charges.

other man approached a second teller and showed her a bag into which she placed the contents of her cash drawer.

After departing with $5,756, Brymer and Turpin made off in a stolen van they had been spotted in earlier in the day. Two witnesses (a woman and a security guard from the shopping mall) followed Brymer and Turpin to a location several blocks away where a switch car (also stolen) was waiting. The woman saw Brymer get out of the driver's side of the getaway van and hold up a large silver revolver. The guard arrived shortly after and saw a man hold up a silver revolver and threaten him with it.

Brymer and Turpin, who had removed their masks, fled in the switch car. After driving the car several blocks, they abandoned it, and carjacked a Dodge pickup truck at gunpoint. During the carjacking, one of the men held the gun to the driver's head and told him he would kill him unless he gave up the truck.

A few blocks away, the two men abandoned the pickup truck, jumped a fence, and ran onto a highway offramp, where they unsuccessfully attempted to carjack a second car.

Later that evening, the police picked up Brymer and Turpin in the general area in which they had fled.

## B. *Procedural History*

On November 12, 2003, a grand jury charged both defendants with: one count of aggravated bank robbery (in violation of 18

U.S.C. § 2113(a) and (d)); one count of carjacking (in violation of 18 U.S.C. § 2119(1)); one count of attempted carjacking (in violation of 18 U.S.C. § 2119(1)); and three counts of use of a firearm during a crime of violence, specifically the three aforementioned offenses (in violation of 18 U.S.C. § 924(c)).

Pursuant to a plea agreement, both Brymer and Turpin pled guilty to Counts Two (violation of § 924(c) with respect to bank robbery) and Four (violation of § 924(c) with respect to carjacking) of the superseding indictment. In exchange, the Government agreed to dismiss the other four counts. The parties agreed to a disposition requiring Brymer and Turpin each to serve the mandatory minimum sentence on both counts consecutively, for a total of 32 years in prison. On January 5, 2006, after accepting the parties' agreed upon recommendation, I sentenced each defendant to 32 years imprisonment.

On November 15, 2007, the United States Court of Appeals for the First Circuit rejected Brymer's appeal concerning his sentence. *United States* v. *Brymer*, 06-1323 (1st Cir. Nov. 15, 2007). None of the issues raised in his current habeas corpus petition were raised on Brymer's direct appeal. Turpin did not appeal.

On June 6, 2016, both Brymer and Turpin filed the motions now before me to vacate the sentences pursuant to 28 U.S.C. § 2255. On September 12, 2016 the government filed a joint

4

opposition to Brymer and Turpin's petitions.  Though the parties filed a joint motion for extension of time for Brymer and Turpin to file a memorandum in reply to the government's opposition, no such reply was filed.  Meanwhile, case law further developing the implications of *Johnson II* has been unfolding.

## II. ANALYSIS

*A.   Timeliness*

Brymer and Turpin filed their 28 U.S.C. § 2255 petitions almost 11 years after being convicted and sentenced.  The Government contends that as a result, their claims are untimely because they fall outside the one-year limitation period for habeas corpus petitions set by § 2255(f).

Under § 2255(f), the one-year limitation period begins to run from the latest of four enumerated events.  Here, the only relevant enumerated event is the "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  28 U.S.C. § 2255(f)(3).

Brymer and Turpin contend that their motions are timely as they filed them within one year of the Supreme Court's decision in *Johnson* v. *United States*, 135 S.Ct. 2551 (2015) ("*Johnson II*") decided on June 26, 2015.  In *Johnson II*, the Supreme Court dealt with the Armed Career Criminal Act ("ACCA"), which imposes

increased prison terms for individuals with three prior convictions of a "violent felony." 18 U.S.C. § 924(e)(1). In the ACCA, the term "violent felony" is defined in a residual clause to include any felony that "involves conduct that presents a serious potential risk of physical injury to another." The Court held in *Johnson II* that the residual clause was unconstitutionally vague. *Johnson II*, 135 S.Ct. at 2563 (2015). In *Welch v. United States*, 136 S.Ct 1257 (2016), the Supreme Court made *Johnson II* retroactive on collateral review.

The Government contends Brymer and Turpin cannot avail themselves of § 2255(f)(3) because the Supreme Court's decision in *Johnson II* (and made retroactive in *Welch*) announced a new substantive rule with respect to the residual clause in the ACCA, whereas Brymer and Turpin are challenging the residual clause of a *different* statute.

All of this raises the question of how liberally one is to construe the term "right" in § 2255(f)(3). Construed narrowly, *Johnson II* created a "right" with respect to collateral review of defendants sentenced pursuant to the ACCA's residual clause. However, construed broadly, one could say *Johnson II* created a "right" that calls into question the constitutionality of other similarly worded residual clauses, including § 924(c)(3)(B). *See generally Sessions* v. *Dimaya*, 138 S.Ct. 1204 (2018). Given that I conclude Brymer and Turpin cannot succeed on the merits,

6

I need not definitely resolve the timeliness issue, other than to observe there is conflicting caselaw. *See, e.g*, *United States* v. *Cuong Gia Le*, 206 F. Supp. 3d 1134, 1146 (E.D. Va. 2016) (defendant challenging the constitutionality of § 924(c)(3)(B) in light of *Johnson II* could not "avail himself of § 2255(f)(3), because the Supreme Court in *Johnson II* did not announce a new rule with respect to the residual clause of § 924(c)"); *but see*, *e.g.*, *Otero* v. *United States*, No. 10-CR-743 (ARR), 2018 WL 2224990, at *1 (E.D.N.Y. May 15, 2018) (holding that similar claim was timely because it was "filed within one year of the date *Johnson* was decided."); *United States* v. *Flores*, No. 208CR163JCMGWF, 2018 WL 2709855, at *2 (D. Nev. June 5, 2018) (same).

### B. *Procedural Default*

Additionally, the Government contends that Brymer and Turpin's procedurally defaulted their claims because they did not raise them at the time of sentencing or on direct appeal.

A defendant procedurally defaults his claim if he fails to raise the error during their criminal trial or on direct appeal. *Bucci* v. *United States*, 662 F.3d 18, 29 (1st Cir. 2011). However, procedural default may be overcome on a motion for relief under § 2255 if the movant can show "cause and actual prejudice or that he is actually innocent." *Bousley* v. *United*

*States*, 523 U.S. 614, 622 (1998) (internal quotations and citations omitted).

    1.   Cause

To establish cause, a defendant must show "that some external impediment . . . prevented [the claim] from being raised earlier." *Andiarena* v. *United States*, 967 F.2d 715, 718 (1st Cir. 1992) (per curiam). The Supreme Court has recognized that "cause" may exist "where a constitutional claim is so novel that its legal basis [was] not reasonably available to counsel" at trial or on appeal. *Reed* v. *Ross*, 468 U.S. 1, 16 (1984) (Brennan, J.). The mere fact that such a claim would have been futile in light of adverse precedent is not sufficient to overcome procedural default. *Bousley*, 523 U.S. at 623. However, where a Supreme Court decision overturns its own precedent or otherwise overturns "a longstanding and widespread practice to which th[e] Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved . . . there will almost certainly have been no reasonable basis upon which an attorney previously could have urged a state court to adopt the position." *Reed,* 468 U.S. at 17.

Some of my colleagues who have addressed the issue of "cause" in the context of claims after *Johnson II*, have concluded that *Johnson II* "created a monumental shift in the law, explicitly overruled Supreme Court precedent as it existed

8

at the time of [the defendant's sentencing] and, thus, generated a novel claim and supplied cause for procedural default . . . ." *Virden* v. *United States*, No. CR 09-10325-LTS, 2017 WL 470891, at *3 (D. Mass. Feb. 3, 2017) (collecting cases) (in the context of habeas petition concerning a sentence imposed pursuant to the ACCA as opposed to § 924(c)). For the purposes of this memorandum, I accept the proposition that the decision in *Johnson II*, when read with the Supreme Court's decision in *Sessions* v. *Dimaya*,[2] shifted the law sufficiently to provide the requisite cause for residual clause challenges to § 924(c).

2. Prejudice

In addition to demonstrating cause, to overcome procedural default, a petitioner must also show "actual prejudice resulting from the errors of which he complains." *United States* v. *Frady*, 456 U.S. 152, 168 (1982) (internal quotation marks omitted). If

---

[2] In *Sessions* v. *Dimaya*, 138 S.Ct. 1204 (2018), the Court dealt with the definition of an "aggravated felony," which includes a "crime of violence" as defined in 18 U.S.C. § 16. *See* 8. U.S.C. § 1101(a)(43)(F). Section 16's definition of "crime of violence" contains a residual clause which defines the term as any other offense that is a felony and that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." § 16(b). Notably, this quoted statutory wording is identical to the statutory wording of the residual clause in § 924(c)(3)(B). In *Dimaya*, the Supreme Court held that the residual clause of § 16 was void for vagueness. *Id.* at 1213-16, 1218-23.

Brymer and Turpin are correct that their predicate crimes do not constitute "crime[s] of violence", then they could not properly have been convicted under § 924(c). However, if they are wrong, then their convictions properly stand.

I ultimately conclude that Brymer and Turpin are not successful on the merits. The "prejudice inquiry dovetails with the merits inquiry." *Lassend* v. *United States*, 898 F.3d 115, 123 (1st Cir. 2018) (Lynch, J.). Consequently, I turn now to the merits, recognizing that resolution of the merits resolves the procedural default issue of prejudice as well.

### III. MERITS

Brymer and Turpin claim that the predicate offenses (federal bank robbery and carjacking) for their convictions do not constitute crimes of violence under either the force clause (also referred to as the "elements clause") or the residual clause of § 924(c)(3). I need address only the force, or elements, clause. *See infra* note 3.

The force clause of § 924(c)(3) defines a crime of violence as an offense that is a felony and "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." § 924(c)(3)(A). Binding First Circuit precedent holds that the predicates for Brymer and Turpin's convictions are such felonies.

As to the predicate crime of bank robbery, in violation of 18. U.S.C. § 2113(a) and (d), the First Circuit has held that "federal bank robbery, and a fortiori federal armed bank robbery, are crimes of violence under the force clause of § 924(c)(3)." *Hunter* v. *United States*, 873 F.3d 388, 390 (1st Cir. 2017).

As to the predicate crime of carjacking in violation of 18. U.S.C. § 2119(1), the First Circuit has held that carjacking constitutes a "crime of violence" pursuant to the force clause of § 924(c)(3) as well. *United States* v. *Cruz-Rivera*, 904 F.3d 63, 66 (1st Cir. 2018).

Consequently, both predicate crimes that were the bases for Brymer and Turpin's § 924(c) convictions were crimes of violence under the force clause. *Johnson II's* treatment of the residual clause is irrelevant here[3] and their convictions properly stand.

---

[3] I will not separately address whether these convictions were crimes of violence under the residual clause of § 924(c). While the First Circuit post-*Johnson II* case law has held the residual clause of § 924(c) is not void for vagueness, *United States* v. *Douglas*, 907 F.3d 1, 4 (1st Cir. 2018), the issue has since been accepted for review by the Supreme Court when on January 4, 2019, certiorari was granted in *United States* v. *Davis*, 903 F.3d 483 (5th Cir. 2018) (invalidating § 924(c)(3)(B)), *cert. granted,* No. 18-431, 2019 WL 98544 (U.S. Jan. 4, 2019). Consequently, the First Circuit's decision in *Douglas* will likely not be the last word on the issue. It would be improvident, especially because it is unnecessary, for me to opine on the outcome of a case now awaiting argument before the Supreme Court.

## IV. CONCLUSION

For the reasons set forth more fully above, Brymer and Turpin's motions to vacate their sentences [Dkt. No. 133; Dkt. No. 134] are DENIED.

*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE